**CIRCUIT COURT OF TENNESSEE**
**ELEVENTH JUDICIAL DISTRICT**
**HAMILTON COUNTY**

FILED IN OFF...
2012 APR -9 PM 3: 36
PAULA T. THOMPSON, CLERK
BY _____ DC

LYNN M. LANE, )
)
        **Plaintiff,** )
) Case No. 12C473
v. )
) Division _____
**NATIONWIDE MUTUAL FIRE** )
**INSURANCE COMPANY,** ) **JURY DEMANDED**
)
        **Defendant.** )

## COMPLAINT

Plaintiff, Lynn M. Lane, ("Plaintiff") by and through counsel, sues Defendant

Nationwide Mutual Fire Insurance Company (hereafter referred to as "Nationwide"), and for her

cause of action states as follows:

1.      Plaintiff is a citizen and resident of Rutherford County, Tennessee.

2.      Defendant Nationwide is an insurance company, licensed to do business and is

doing business in Tennessee, and may be served with process through the Commissioner of

Insurance for the State of Tennessee.

3.      All acts, omissions, and occurrences complained of herein occurred in Hamilton

County, Tennessee.

4.      On or about February 28, 2011, a tree struck Plaintiff's home located at 1629

Edgehill Avenue, Chattanooga, Tennessee. At the time of the incident, Plaintiff's home was

insured by Nationwide. A copy of Plaintiff's homeowner's insurance policy is attached hereto

and incorporated herein as Exhibit A to this Complaint.

5.      Upon her discovery of the above-referenced facts, Plaintiff properly and promptly

notified Defendant Nationwide, and took all necessary actions to submit a claim for damage

EXHIBIT
Collective
A

caused by the event. Nationwide inspected the premises, placed a tarp over the roof, but failed to take any additional action.

6. On April 27, 2011, a tornado and storm struck the Chattanooga area and caused significant damage to the residence and the contents of Plaintiff's home. At such time, Nationwide had failed to take steps to remedy the prior damage and allowed a hole in the roof to fester. As a result, the April 27, 2011 storm caused tremendous damage to the home. Upon discovery of the above-referenced facts, Plaintiff properly and promptly notified Defendant Nationwide, and took all necessary actions to submit a claim for the above-referenced damages.

7. Nationwide failed to take necessary and appropriate steps to remedy the damage covered by Plaintiff's insurance policy. The failure of Nationwide to take appropriate action has caused ongoing damage to Plaintiff's home and its contents, rendering them a total loss. The home remains uninhabitable.

8. Plaintiff and Nationwide entered a binding contract. Nationwide has failed to honor the contract and Plaintiff has suffered damages as a result.

9. To date, Nationwide has refused to pay Plaintiff's claim and damages, which constitutes a breach of contract. Because of the current condition of the home, caused by the conduct of Nationwide, Nationwide has informed Plaintiff it will not renew Plaintiff's policy. Nationwide's refusal to honor Plaintiff's claim and its related conduct constitutes a "bad faith" denial of benefits, as defined in and prohibited by Tenn. Code Ann. § 56-7-105, et seq. Nationwide's conduct also is in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq., entitling Plaintiff to attorneys' fees, treble damages and costs.

WHEREFORE, the foregoing premises considered, Plaintiff prays as follows:

1. That process issue and be served upon Defendant Nationwide, requiring it to answer within the time allowed by law.

2. That a jury be impaneled to hear this cause.

3. That judgment be entered for Plaintiff and against Defendant Nationwide for all damages in an amount deemed reasonable and just by the jury, plus all bad faith penalties allowed by Tenn. Code Ann. § 56-7-105 et seq.

4. That Plaintiff be awarded reasonable attorneys' fees incurred as a result of Defendant Nationwide's conduct.

5. That Plaintiff be awarded her attorneys' fees, costs and treble damages under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq.

6. That the costs of this cause, both discretionary and non-discretionary, be taxed against the Defendant Nationwide.

7. That Plaintiff be awarded any and all other and further relief to which she is entitled under the laws of the State of Tennessee, including, but not limited to, prejudgment issues to the maximum extent allowed by law.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: _____

William R. Dearing, BPR No. 014293
Jeffrey G. Granillo, BPR No. 027259
1000 Tallan Building
Two Union Square
Chattanooga, TN 37402
(423) 756-3000
Email: wdearing@cbslawfirm.com
jgranillo@cbslawfirm.com

0775500004086

63 41 HO 415749

# *Your Nationwide® Homeowners Policy*



**Nationwide Insurance Companies, Home Office: One Nationwide Plaza, Columbus, Ohio 43215-2220**

**EXHIBIT**

**A**

# Table of Contents — *Homeowners Policy*

**INSURING AGREEMENT** .............................................. A1
**DEFINITIONS** ..................................................... A1-A2
**COVERAGES:**

**Section I - Property Coverages** ................................. B1-B6
    Coverage A - Dwelling
    Coverage B - Other Structures
    Coverage C - Personal Property
    Coverage D - Loss of Use
    Additional Property Coverages
    **Perils Insured Against** ................................. C1-C2
    **Property Exclusions** ................................... D1-D3
    **Property Conditions** ...................................E1-E3

**Section II - Liability Coverages** ............................... G1-G3
    Coverage E - Personal Liability
    Coverage F - Medical Payments to Others
    Additional Liability Coverages
    **Liability Exclusions** .................................. H1-H4
    **Liability Conditions** .................................. J1

**POLICY COVERAGE OPTIONS** ........................................K1-K7

**GENERAL POLICY CONDITIONS**
How Your Policy May Be Changed ..................................... L1
Concealment or Fraud .............................................. L1
Renewal ........................................................... L1
Non-Renewal ....................................................... L1
Cancellation During Policy Period ................................. L1
Policy Transfer ................................................... L2
Subrogation ....................................................... L2
Death ............................................................. L2
Additional Insured - Non Occupant ................................. L2
Optional Payment of Premium in Installments ....................... L3
Non-Sufficient Funds .............................................. L3
Dividends.......................................................... L3

**MUTUAL POLICY CONDITIONS**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company ........................... L3

Includes copyrighted material of Insurance Services Offices, with its permission.
Copyright, Insurance Services Office, 1975, 1977.

0775500004093

63 41 HO 415749

0755COO004109

63 41 HO 415749

# Insuring Agreement

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

# Definitions

Certain words and phrases used in this policy are defined as follows:

1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.

2. "YOU" and "YOUR" refer to the named insured shown in this policy who resides at the residence premises. These terms also mean your spouse who resides at the same residence premises.

3. "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. Business also includes any occasional business pursuits of an insured, including ownership of rental property. It includes home care services regularly provided to a person or persons, other than insureds or insureds' relatives, for which there is monetary or other compensation. A mutual exchange of home care services is not considered compensation. Exceptions, if any, are noted on the Declarations.

4. "INSURED" means you and the following if residents of your household at the residence premises:
   a) your relatives.
   b) any other person under age 21 and in the care of you or your relatives.

5. "INSURED LOCATION" means:
   a) the residence premises.
   b) the part of any other premises, structures, and grounds used by you as a residence and shown in the policy; also any of these acquired by you during the policy period for your use as a residence.
   c) a premises you use with premises defined in 5. a) or 5. b).
   d) a part of a premises, not owned by an insured, where an insured is temporarily living.
   e) vacant land, other than farm land, owned by or rented to an insured.
   f) land, other than farm land, owned by or rented to an insured on which a one or two-family dwelling is being built as a residence for an insured.
   g) cemetery plots or burial vaults of an insured.
   h) a part of a premises rented on occasion to an insured for purposes other than business.

6. "MOTOR VEHICLE" means:
   a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to motor vehicle registration.
   b) a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.
   c) any vehicle while being towed by or carried on a vehicle defined in 6. a) or 6. b).

7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

8. "AIRCRAFT" means any machine or device capable of atmospheric flight, except models.

9. "ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

10. "FOUNDATION" means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.

11. "BIOLOGICAL DETERIORATION OR DAMAGE" meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.

0775500004118

63 41 HO 415749



# Section I
# Property Coverages

## Coverage Agreements

### COVERAGE A — DWELLING

We cover:

1. the dwelling on the **residence premises** used mainly as **your** private residence, including attached structures and attached wall-to-wall carpeting.

2. materials or supplies on or adjacent to the **residence premises** for use in construction, alteration or repair of:
   a) the dwelling; or
   b) Coverage B — Other Structures.

We do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE B — OTHER STRUCTURES

We cover other structures on the **residence premises**. They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

We do not cover:

1. other structures used in whole or in part for **business** purposes.

2. other structures rented or held for rental to anyone, unless used solely as a private garage.

3. land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE C — PERSONAL PROPERTY

We cover personal property owned or used by an **insured** at the **residence premises**. At **your** request, we will cover personal property owned by others. It must be on the part of the **residence premises** occupied by an **insured**. This extension of coverage does not increase the limit of liability.

Our limit of liability for personal property while away from the **residence premises** is 10 percent of the limit of liability for Coverage C or $1,000, whichever is greater. This 10 percent limitation does not apply to personal property:

1. removed from the **residence premises** due to a covered loss;

2. in transit to and from, or while in a newly acquired principal residence for 30 days. The 30 days start right after **you** begin to move the property; or

3. stored in a commercial storage facility up to 180 days. The 180 days start when **you** begin to move the property. A commercial storage facility does not include a self-storage unit.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

The following special limits apply only to theft losses:

1. $1,000 for jewelry, watches, furs, and precious and semi-precious stones.

2. $1,000 for guns, including accessories.

3. $1,000 for cameras (film, digital or video), including accessories. It does not include cameras used in **business**.

4. $2,500 for silverware, silver-plated ware, goldware, gold-plated ware, and pewterware.

5. $1,000 for tools not used in **business**. This limit does not apply to lawn and garden tools used to service the **residence premises**.

The following special limits apply to all covered losses:

6. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, stored value cards, smart cards, gift certificates and medals.

7. $1,000 for securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets.

8. $3,000 for computers, including hardware and software accessories, operating software, application software or other similar software, which can be replaced with like kind and quality on the retail market. This includes electronic storage media such as, but not limited to, tapes or diskettes. Stored data is not covered.

9. $500 for **business** property on the **residence premises** except computers including their hardware and software described above.

10. $1,000 for watercraft and outboard motors, including trailers, furnishings and equipment.

11. $1,000 for utility type trailers not used with watercraft.

12. $1,000 for manuscripts, regardless of the medium.

**PROPERTY NOT COVERED. We** do not cover:

1. articles separately described and specifically insured in this or any other insurance.

2. animals, birds or fish.

3. house or travel trailers.

4. **motor vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:

   a) their parts or equipment, whether attached to or separated from the **motor vehicle** or motorized land conveyance; or

   b) accessory equipment; or

   c) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **motor vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most **we** will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

   **We** do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a) used solely to service the **insured's** residence;

   b) designed to assist the handicapped; or

   c) a motorized golf cart while being operated to or from, or on the premises of a golf course.

5. **aircraft** and parts.

6. property of roomers, boarders, and other tenants. Personal property, at the **residence premises**, belonging to roomers and boarders related to an **insured** is covered.

07755000004123

53 41 HO 415749



7.  property in an apartment regularly rented or held for rental to others by an **insured**.

8.  property rented or held for rental to others away from the **residence premises**.

9.  **business** property away from the **residence premises**.

## COVERAGE D — LOSS OF USE

We cover, subject to the coverage limit which is the total limit, all of the following:

1.  **Additional Living Expense.** If a covered loss requires **you** to leave the **residence premises**, **we** will pay the required increase in living expenses you incur to maintain **your** normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if **you** permanently relocate, for the shortest time required for **your** household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2.  **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the **residence premises** rented to others or held for rental, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the **residence premises** is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3.  **Prohibited Use.** If a civil authority prohibits **your** use of the **residence premises** because of direct damage to neighboring premises by a peril insured against in this policy, **we** will pay the resulting loss, for up to two weeks while use is prohibited, for:

    a)  Additional Living Expense; and

    b)  Fair Rental Value.

We do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an **insured's business**, whether conducted on or off any **insured location**.

No deductible applies to this coverage.

# *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1.  **Debris Removal. We** will pay reasonable expense **you** incur removing debris of covered property, if the peril causing the loss is covered. This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. **We** will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property or restrict access. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2.  **Live Tree Debris Removal.** In the event of a loss, **we** will also pay the reasonable expense **you** incur for the removal of live tree debris from the **residence premises**, that does not cause damage to covered property or covered structures. The most **we** will pay is $500, regardless of the number of

trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

3. **Reasonable Repairs.** We will pay reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. This expense is included in the limit of liability applying to the damaged property.

4. **Trees, Shrubs, Plants, and Lawns.** We cover trees, shrubs, plants, or lawns on the **residence premises** for loss caused by the following perils: fire and lightning; explosion; riot and civil commotion; aircraft; vehicles not owned or operated by a resident of the **residence premises**; vandalism or malicious mischief; collapse of a building; or, theft. Liability is limited to five (5) percent of the Coverage A limit of liability for all trees, shrubs, plants and lawns. It is limited to $500 for one tree, shrub or plant. This coverage may increase the limit of liability.

   We do not cover property grown for **business** purposes.

5. **Fire Department Service Charge.** We will pay up to the amount stated on the Declarations for **your** liability under contract or agreement for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

6. **Property Removed.** Covered property removed from a premises because it is in danger from a covered peril is covered for direct loss from any cause. The property is covered while being removed and for 30 days while removed. After 30 days the property is covered for direct loss from a peril insured against. This does not change the coverage limit.

7. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage.** We will pay up to the amount stated on the Declarations for:
   a) the legal obligation of an **insured** to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **insured's** name. However, we do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.
   b) loss to an **insured** caused by forgery or alteration of a check or negotiable instrument.
   c) loss to an **insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   We do not cover loss arising out of the **business** pursuits, or dishonesty of an **insured**.

   We do not cover loss arising out of identity theft or identity fraud including a covered act as outlined in subsections a), b), or c) of this section.

   No deductible applies to this coverage.

   We may make any investigation and settle any claim or suit as we decide is appropriate. Our obligation to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   If a claim is made or a suit is brought against an **insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, we will provide defense at our expense by counsel of our choice.

   We may defend at our expense an **insured** or an **insured's** bank against a suit for the enforcement of payment under the forgery coverage.

   Our duty to defend does not apply to identity theft or identity fraud.

8. **Inflation Protection Coverage.** If the Declarations show this coverage applies, **we** will adjust the limit of liability on the Declarations for Section I — Coverages. The limit of liability will change as the appropriate index, shown on the Declarations, changes.

   **We** will compare the latest available index to the index as of the effective date of this policy. **We** will adjust the limit of liability by the percentage change in the index. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

   If **you** request a change in the dwelling limit of liability, the effective date of this coverage will be amended to the effective date of that change.

   This coverage will not reduce **our** limit of liability during the current policy period below that for which premium has been paid.

9. **Consequential Loss. We** cover **insured** personal property in a building at the **residence premises** for loss due to temperature change resulting from power interruption. There must be damage to the **residence premises** caused by a covered peril.

10. **Refrigerated Property.** If a power interruption occurs, off the **residence premises**, **we** will pay up to a maximum of $500 for loss of contents in a freezer or refrigerator due to temperature changes. **You** must use all reasonable means to protect the covered property from damage or this coverage is void.

11. **Lock Replacement. We** will pay up to $100 to replace the exterior door locks on **your residence premises** with deadbolt locks or to rekey the lock cylinders of existing deadbolt locks, whichever is less. This coverage applies only if the keys to **your residence premises** are stolen.

    No deductible applies to this coverage.

12. **Collapse. We** cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if:

    a) it is standing but in danger of falling down or caving in;

    b) it is standing but has separated from any other part of the building;

    c) it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The **collapse** must be sudden and accidental and caused by one or more of the following:

    a) one of the Coverage C — Personal Property perils insured against;

    b) hidden decay of a supporting or weight bearing building structural member;

    c) hidden insect or vermin damage of a supporting or weight bearing building structural member;

    d) weight of:

       (1) contents, equipment, animals or people; or

       (2) rain, ice, sleet or snow which collects on the roof; or

    e) defective material or methods used in the construction, repair or remodeling or renovation if the **collapse** occurs in the course of work being done.

    The presence of any decay, insect or vermin damage must be unknown to an **insured** prior to **collapse**.

    Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **foundation**, retaining wall, bulkhead, pier, wharf, or dock is not included under items b), c), d), or e) unless the loss is a direct result of the **collapse** of a building.

    The limit of liability applying to the covered property is not increased by this coverage.

13. **Household Supplies.** **We will pay** up to a maximum of five (5) percent of the Coverage A — Dwelling coverage limit for direct physical loss to property described in Coverages A and B arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage, leakage, or escape of household supplies on the **residence premises.** Household supplies includes items currently in use or in **your** possession at the **residence premises,** in normal household quantities such as household cleaning supplies, pesticides, and other similar items.

Section I — **Property Exclusion 1.j)** does not apply to any loss covered under this **Additional Property Coverage, Household Supplies.** In no event, however, will we ever cover:

a) loss arising out of materials containing asbestos, lead, formaldehyde, fuel or petroleum products; or

b) any fee, assessment or expense of any governmental authority; or

c) loss arising out of household supplies possessed or used:

(1) for **business** purposes;

(2) for illegal purposes;

(3) by contractors; or

(4) on driveways or walkways.

14. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in **biological deterioration or damage** to property covered under Coverages A, B, and C, we will pay, up to the amount shown on the Declarations, for:

a) the cost to clean up, remove and dispose of the **biological deterioration or damage** to covered property;

b) the cost to tear out and replace any part of the building or other covered property needed to gain access to the **biological deterioration or damage;**

c) the cost of testing which is performed in the course of clean up and removal of the **biological deterioration or damage** from the **residence premises;** and

d) additional living expenses **you** may incur, as outlined under Coverage D, that results from items a), b) or c) above.

The coverage amount shown on the Declarations for this Additional Property Coverage is the most we will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if **you** report the **biological deterioration or damage** to us within 180 days of having first discovered the **biological deterioration or damage.**

The covered cause of loss that causes or results in **biological deterioration or damage** to covered property must have occurred during the policy period.

This is an additional amount of coverage.

0775500000147

63 41 HO 415749

# *Perils Insured Against*

(Section I)

## *Covered Causes of Loss*

### COVERAGE A — DWELLING and
### COVERAGE B — OTHER STRUCTURES

We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I — Property Exclusions.

### COVERAGE C — PERSONAL PROPERTY

We cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I — Property Exclusions:

1. fire or lightning.

2. windstorm or hail.

   Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. This peril includes loss to:
   a) rowboats and canoes inside or outside a building.
   b) other watercraft and outboard motors, including their trailers, furnishings, and equipment, while inside a fully enclosed building.

3. explosion.

4. riot or civil commotion.

5. aircraft, missiles propelled and spacecraft.

6. vehicles.

7. sudden and accidental damage from smoke. This does not include loss due to smoke from farm or industrial operations.

8. vandalism and malicious mischief.

   This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. theft, including attempted theft. Loss of property from a known location when it is likely the property was stolen is covered. Loss of precious or semi-precious stones from their settings is not covered. This peril does not include loss caused by any theft:
   a) committed by an **insured**.
   b) in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.
   c) of money, securities, stamps, jewelry, watches, gems, articles of gold, silver, or platinum from any part of a **residence premises** usually occupied solely by an **insured** while rented to other than an **insured**.

This peril does not include loss caused by theft that occurs away from the **residence premises** of:

a) property while at any other residence owned by, rented to, or occupied by an **insured**, except while an **insured** is temporarily living there. Property of an **insured** student is covered at a residence away from home if the student has been there within 45 days prior to the loss.

b) trailers and campers.

c) watercraft and outboard motors, including their furnishings and equipment.

10. falling objects. This peril does not include loss to:

a) property in a building, unless the roof or an exterior wall of the building is first damaged by a falling object.

b) the falling object itself.

11. weight of ice, snow, or sleet which causes damage to property in a building.

12. accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. This peril does not include loss:

a) caused by or resulting from water that backs up from outside the dwelling's plumbing system and enters through sewers or drains; or water entering or overflowing a sump pump, sump pump well or other system designed to remove subsurface water drained from the **foundation** area except as may be provided elsewhere in this policy or by endorsement.

b) due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of time and results in deterioration, corrosion, or rust.

c) due to freezing except as provided by the peril of freezing.

d) to the system or appliance from which the water, steam or moisture escaped.

13. accidental electrical damage to electrical appliances, devices, fixtures and wiring. This peril does not include loss to transistors and tubes including picture tubes.

14. sudden and accidental tearing apart, cracking, bursting, burning or bulging of:

a) a steam or water heating system.

b) a fire protective sprinkler system.

c) an air conditioning system.

d) an appliance for heating water.

Freezing is not covered under this peril.

15. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance. This peril does not include loss on the **residence premises** while unoccupied, vacant or under construction unless **you** have used reasonable care to:

a) maintain heat in the building; or

b) shut off the water supply and drain the system and appliances of water.

077550000004154

63 41 HO 415749

# *Property Exclusions*

(Section I)

1. **We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.**

   a) **Earth Movement and Volcanic Eruption.** Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. Volcanic eruption means: eruption; explosion; or discharge from a volcano.

   Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

   b) **Water or damage caused by water-borne material.** Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

      (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

      (2) water or water-borne material which:

         (a) backs up through sewers or drains from outside the dwelling's plumbing system; or

         (b) overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

      (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **foundation**, swimming pool, or other structure.

      Resulting direct loss by fire, explosion, or theft is covered.

   c) **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

   d) **War or Warlike Acts.** This includes insurrection, rebellion or revolution. Discharge of a nuclear weapon is considered a warlike act even if accidental.

   e) **Nuclear Hazard,** meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

   f) **Increased Hazard,** meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **insured**.

   g) **Intentional Acts,** meaning loss resulting from an act committed by or at the direction of an **insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**.

   h) **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

   i) **Collapse,** except as provided by Section I — Additional Property Coverages — **Collapse**.

j) Contamination or Pollution, meaning any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

   (1) solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;

   (2) vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

   (3) fuel oil and other petroleum products; or

   (4) any other waste materials or other irritants, contaminants or pollutants.

k) Loss Assessments, unless, optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

l) Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

   Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

m) Biological deterioration or damage, except as provided by Section I — Additional Property Coverages — Biological Deterioration or Damage Clean Up and Removal.

2. We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

   a) A fault, weakness, defect or inadequacy in the:

      (1) specifications, planning, zoning;

      (2) design, workmanship, construction, materials;

      (3) surveying, grading, backfilling;

      (4) development or maintenance;

      of any property on or off the residence premises, whether intended or not.

   b) Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.

   c) Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

3. We do not cover loss to property described in Coverages A and B resulting directly from any of the following:

   a) freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

      This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drained the system and appliance of water.

   b) freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

      (1) fence, pavement, patio or swimming pool;

      (2) foundation, retaining wall, or bulkhead; or

      (3) pier, wharf or dock.

c) theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

d) vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic protective sprinkler system; household appliance; or plumbing system that results in deterioration or rust. Continuous or repeated seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.

If loss caused by water or steam is not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped.

f) (1) wear and tear, marring, deterioration;

(2) inherent vice, latent defect, mechanical breakdown;

(3) smog, rust;

(4) smoke from agricultural smudging or industrial operations;

(5) release, discharge, or dispersal of contaminants or pollutants;

(6) settling, cracking, shrinking, bulging or expansion of pavements, patios, **foundations**, walls, floors, roofs or ceilings;

(7) birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered;

(8) root growth, movement or action;

(9) mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

(10) mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

If any of items f)(1) through (8) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, we cover loss caused by the water not otherwise excluded. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.

Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.

0775500004176

63 41 HO 415749

# *Property Conditions*

(Section I)

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

   a) to the **insured** for more than the **insured's** interest.

   b) for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the **insured**. We pay for covered loss above the deductible amount.

3. **Your Duties after Loss.** In case of loss, **you** must:

   a) give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to **us** or **our** agent within 6 months of the loss event.

   b) protect the property from further damage. **You** must make repairs required to protect the property and keep a record of repair expenses.

   c) as often as **we** reasonably require:

      (1) show **us** the damaged property; and

      (2) provide records and documents **we** request and permit **us** to make copies.

      (3) submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

   d) submit to **us**, within 60 days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

      (1) the time and cause of loss.

      (2) interest of the **insured** and all others in the property involved and all liens on the property.

      (3) other insurance that may cover the loss.

      (4) changes in title or occupancy of the property during the term of the policy.

      (5) specifications of any damaged property and detailed estimates for repair of damage.

      (6) a list of damaged personal property showing in detail the quantity, description, **actual cash value**, and amount of loss. Attach all bills and receipts that support the figures.

      (7) receipts for additional living expenses and records supporting the fair rental value loss.

      (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

   a) **actual cash value** at the time of loss, the amount not to exceed **actual cash value**, needed to repair or replace:

      (1) personal property and structures that are not buildings;

      (2) carpeting (including wall-to-wall) and cloth awnings;

(3) outdoor antennas, whether or not attached to the building;

(4) home appliances, unless built in as a part of the dwelling.

b) the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:

(1) we will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.

(2) when **you** claim loss or damage to buildings on an **actual cash value** basis. **You** may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.

(3) if **you** choose not to repair or replace, **we** will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

5. **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

a) In case of loss to a pair or set, **we** may elect to:

(1) repair or replace a part to restore the pair or set to its value before the loss; or

(2) pay the difference between **actual cash value** of the property before and after the loss.

b) At **our** option, **we** may repair or replace any part of the damaged property with equivalent property, providing **we** give **you** written notice within 30 days after receiving **your** signed, sworn proof of loss.

c) **We** will pay **you** unless some other person is named in this policy to receive payment. Payment will be made within 60 days after **we** receive **your** proof of loss and:

(1) reach agreement with **you**; or

(2) there is an entry of a final judgment; or

(3) there is a filing of an appraisal award with **us**.

d) After **we** have paid for a loss by theft or disappearance of covered property, **we** have the right to all or part of any recovered property. **You** must protect these rights and inform **us** of any recovery. If **you** wish to retain the recovered property, **our** loss payment will be adjusted by the value of such property.

e) After **we** have paid for a loss, **we** have the right to all or part of any salvageable property. **We** may permit **you** to keep the damaged property but **we** will reduce the amount of the loss paid to **you** by the value of the retained damaged property.

6. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either can demand that the amount be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire

will be paid equally by you and us. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **actual cash value**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us**. The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you** and **us**. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us**.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage.

9. **Abandonment of Property.** **We** need not accept property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a) notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

    b) pays premium due under this policy on **our** demand, if **you** neglected to pay the premium.

    c) submits a signed, sworn proof of loss within 60 days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

    If **we** cancel the policy, **we** will notify the mortgagee at least 10 days before the cancellation takes effect. If **we** pay the mortgagee for loss and deny payment to **you**:

    a) **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b) at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling **your** property for a fee.

12. **Glass Replacement.** **We** will replace covered glass using safety glazing materials when required by ordinance or law.

0775500004185

63 41 HO 415749

07755000004192

63 41 HO 418749



# Section II
# Liability Coverages

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3. "RESIDENCE EMPLOYEE" means an employee of an **insured** who performs duties in connection with maintenance or use of the **residence premises**. This includes household or domestic services or similar duties elsewhere not in connection with the **business** of an **insured**.

4. "OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition. The **occurrence** must be during the policy period.

5. "INSURED" means **you** and the following persons if residents of **your** household at the **residence premises:**
   a) **your** relatives;
   b) any other person under age 21 and in the care of **you** or **your** relatives;
   c) a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an **insured**. A person or entity using or having custody of these animals or watercraft in the course of **business**, or without permission of the owner, is not an **insured**.
   d) any person operating, utilizing, or maintaining a covered vehicle while engaged in **your** employment or that of an **insured**.

## Coverage Agreements

### COVERAGE E — PERSONAL LIABILITY

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

## COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical and funeral expenses incurred within three years after an accident causing **bodily injury**. This coverage does not apply to **you**. It does not apply to regular residents of **your** household. It does apply to **residence employees**. Payment under this coverage is not an admission of **our** or an **insured's** liability. This coverage applies as follows:

1. to a person on the **insured location** with consent of an **insured**.

2. to a person off the **insured location**, if the **bodily injury**:
    a) arises out of a condition in the **insured location**.
    b) is caused by the activities of an **insured**.
    c) is caused by a **residence employee** of an **insured**.
    d) is caused by an animal owned by or in the care of an **insured**.

# *Additional Liability Coverages*

We will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1. **Claims Expenses. We will pay:**
    a) expenses we incur and costs taxed against an **insured** in a legal action we defend.
    b) premiums on bonds required in a suit we defend. This does not include bond amounts greater than the Coverage E limit of liability. We are not obligated to apply for or furnish a bond.
    c) reasonable expenses incurred by an **insured** at **our** request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for assisting **us** in the defense of a claim or suit.
    d) post-judgment interest. This must accrue after entry of the judgment. It must accrue before **we** pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others.** We will pay for **property damage** to property of others caused by an **insured** regardless of legal liability. We will pay up to $1,000 per **occurrence**, but not more than the smallest of the replacement cost or the cost to repair the damaged property. We will not pay for **property damage**:
    a) to property covered under Section I.
    b) caused intentionally by an **insured** who is age 13 or older.
    c) to property owned by or rented to an **insured**, a tenant of an **insured**, or a resident in **your** household.
    d) arising out of:
        (1) **business** pursuits.
        (2) an act or omission in connection with a premises owned, rented, or controlled by an **insured**, other than an **insured location**.
        (3) the ownership, maintenance or use of a **motor vehicle**, **aircraft**, or watercraft.

4. **Accidental Death Benefits.** **We** will pay $500 ($2,000 if an adult) to the estate of the deceased for accidental loss of life of an **insured**. Death must be solely caused by accident. The adult benefit applies to an **insured** age 18 or older. Accident means an event which is sudden, unforeseen, and unintended. Death must be within 90 days of the accident. It must result directly from **bodily injury** suffered on the **residence premises**. Death must be independent of other causes. Coverage ends for an **insured** on the nearest policy renewal date to such **insured's** 65th birthday. **We** will not pay where death results directly or indirectly, wholly or in part, from any of the following causes:

a) disease, bodily or mental illness;

b) medical or surgical treatment for disease, bodily or mental illness;

c) infection unless it results from visible wounds. It must be the result of an accident which happened at the **residence premises**;

d) suicide, whether the deceased was sane or insane;

e) sensitivity to drugs or an overdose of drugs;

f) taking poison or inhaling gas, voluntarily;

g) war or an act of war, declared or undeclared. It does not matter whether the **insured** is in military service or not.

0775500004208

63 41 HO 415749



07755000004215

63 41 HO 415749

# *Liability Exclusions*

1. Coverage E--Personal Liability and Coverage F--Medical Payments to Others do not apply to **bodily injury** or **property damage**:

   a) caused **intentionally** by or at the direction of **an insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

   This exclusion 1.a) does not apply to:

   (1) corporate punishment of pupils.

   (2) **bodily injury** or **property damage** caused by an **insured** trying to protect person or property.

   b) caused by or resulting from an act or omission which is criminal in nature and committed by an **insured**.

   This exclusion 1.b) applies regardless of whether the **insured** is actually charged with, or convicted of a crime.

   c) arising out of **business** pursuits of an **insured**.

   This exclusion 1.c) does not apply to:

   (1) activities normally considered non-**business**.

   (2) occasional or part time self-employed **business** pursuits of an **insured** under age 19 years old (age 23 if a full-time student).

   (3) an office, school, studio, barber or beauty shop on the **residence premises** if noted on the Declarations.

   (4) home care services provided by or at the direction of an **insured** on or from the **residence premises** if noted on the Declarations.

   d) arising out of the rental or holding for rental of any part of any premises by an **insured**. Exceptions, if any, are noted on the Declarations.

   This exclusion 1.d) does not apply to the rental or holding for rental of part of **your residence premises**:

   (1) occasionally for the exclusive use as a residence.

   (2) unless intended as a residence by more than two roomers or boarders.

   (3) as a private garage.

   e) arising out of any professional liability except teaching.

   f) arising out of premises owned or rented to an **insured** but not an **insured location**.

   This exclusion 1.f) does not apply to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

   g) arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an **insured** of; or statutorily imposed liability on an **insured** related to the use of:

   (1) an **aircraft**.

   (2) a **motor vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **insured**.

This exclusion 1.g)(2) does not apply to:

(a) a vehicle owned by an **insured** and designed for recreation off public roads while on an **insured location**.

(b) a motorized golf cart while being operated to or from, or on the premises of a golf course.

(c) a vehicle not subject to **motor vehicle** registration which is:

    i)   used to service an **insured's** residence; or

    ii)  designed for assisting the handicapped.

(d) a vehicle in dead storage on an **insured location**. Dead storage means physically prepared for long term storage.

(e) a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a).

(f) **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

(3) a watercraft owned or operated by, or rented or loaned to an **insured**:

(a) if the watercraft is a personal watercraft powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than 50 horsepower.

(b) if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length.

(c) while rented to others.

(d) while being used to carry persons or property for a fee.

(e) while being used without an **insured's** permission.

(f) while being used in an official race or speed test. This exclusion does not apply to sailboats.

(g) if it is an airboat, air cushion or similar type watercraft.

This exclusion 1.g)(3) does not apply:

(1) while the watercraft is stored.

(2) when an **insured** rents or borrows a nonowned outboard motor boat for eight (8) or less consecutive days.

(3) to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

h) caused by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear weapon is a warlike act, even if accidental.

i) resulting from an **insured** transmitting a communicable disease.

j) arising from the ingestion, inhalation or absorption of lead or lead compounds.

k) arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage or escape of:

(1) solid, liquid, gaseous, or thermal irritants or contaminants, including smoke (except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace), vapors, soot, fumes, acids, alkalis, toxic chemicals and wastes, toxic liquids or toxic gases;

(2) fuel oil and other petroleum products; or

(3) any other waste materials or other irritants, contaminants or pollutants.

This exclusion 1.k) does not apply to **bodily injury** arising out of routine lawn and garden care of an **insured location**.

l) resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

m) resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.m) does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

n) **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

(1) a workers' compensation;

(2) an unemployment compensation;

(3) a non-occupational or occupational disease;

(4) a disability benefits;

or any similar law.

o) caused by any of the following animals owned by or in the care of an **insured**:

(1) the following types of pure bred dogs or a mix breed including one of these types:

(a) American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

(b) Doberman Pinschers;

(c) Rottweilers;

(d) Chow Chows; or

(e) Presa Canarios;

(2) wolf hybrids;

(3) dogs that have been trained to attack persons, property or other animals; or dogs that have been trained to guard persons or property;

(4) any dog, used in any manner, as a fighting dog or bred specifically for fighting;

(5) any dog with a prior history of:

(a) causing **bodily injury** to a person; or

(b) attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

p) arising out of **biological deterioration or damage**.

2. Coverage E — Personal Liability does not apply to:

a) liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

b) liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any **business** of an **insured**.

c) **property damage** to property owned, produced or distributed by an **insured**.

0775500004222

63 41 HO 415749

d) **property damage** to property rented to, occupied or used by, or in the care of an **insured**.

This exclusion 2.d) does not apply to **property damage**:

(1) caused by fire, smoke, or explosion; or

(2) to house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.

e) **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy; or would be an **insured** but for its termination upon exhaustion of its limit of liability.

f) **bodily injury** to an **insured** as defined in Section II — Liability Definitions 5.a) and 5.b).

3. Coverage F — Medical Payments to Others does not apply to **bodily injury**:

a) to a **residence employee** if it occurs off the **insured location**. It does apply if the **bodily injury** arises out of the **residence employee's** employment by an **insured**.

b) from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

0775500004239

63 41 HO 415749

# *Liability Conditions*

(Section II)

1. **Limits of Liability. Our** total liability under Coverage E for all damages resulting from one occurrence will not exceed the limit for Coverage E shown on the Declarations. This is true regardless of the number of **insureds**, claims made or persons injured.

   Our total liability under Coverage F for all medical expense for **bodily injury** to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition does not increase our limit of liability for one occurrence.

3. **Duties after Loss.** In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.

   a) give notice to **us** or **our** agent as soon as practicable setting forth:

      (1) identity of the policy and **insured.**

      (2) time, place, and facts of the accident or **occurrence.**

      (3) names and addresses of the claimants and witnesses.

   b) immediately forward to **us** every document relating to the accident or **occurrence.**

   c) at **our** request, assist in:

      (1) making settlement.

      (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an **insured.**

      (3) conducting suits, and attending hearings and trials.

      (4) giving evidence and asking witnesses to attend.

   d) under the coverage — Damage to Property of Others:

      (1) submit to **us**, within 60 days after the loss, a sworn proof of loss; and

      (2) exhibit the damaged property, if within the **insured's** control.

   e) the **insured** shall not, except at the **insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **bodily injury.**

   f) Under the coverage — Accidental Death Benefits:

      (1) **you** agree to authorize **us** to receive medical reports and copies of supporting records;

      (2) **we** have the right and opportunity to make an autopsy where not forbidden by law.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone on behalf of the injured person will:

   a) give **us** written proof of claim, under oath if required, as soon as possible.

   b) authorize **us** to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.

5. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as party to an action against an **insured.** No action with respect to Coverage E can be brought against **us** until the obligation of the **insured** has been determined by final judgment or agreement signed by **us.**

6. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligations under this policy.

07755000004246

63 41 HO 415749

# *Policy Coverage Options*

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

**Option A.** **Jewelry.** The coverage for jewelry, watches and furs is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear or mechanical breakdown.
2. gradual deterioration or inherent vice.
3. insects or vermin.
4. losses excluded under Section I — Property Exclusions that apply to personal property.

**Option B.** **Guns.** The coverage for guns, including accessories is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.
2. insects or vermin.
3. refinishing, renovating or repairing.
4. dampness or temperature extremes, rust, fouling or explosion.
5. inherent defect or faulty manufacture.
6. breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.
7. losses excluded under Section I — Property Exclusions that apply to personal property.

**Option C.** **Cameras.** The coverage for cameras (film, digital or video), including accessories, is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.
2. renovating or repairing, rust, dampness or temperature extremes.
3. inherent defect or faulty manufacture, insect or vermin.
4. breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.
5. losses excluded under Section I — Property Exclusions that apply to personal property.

The limits of liability for property covered by **Options A, B or C** are amended as follows:

The option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit, with a $1,000 maximum for any one item, for loss by:

1. theft; or
2. a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option D. Silverware.** The coverage and limits of liability for silverware, silver-plated ware, goldware, gold-plated ware and pewterware is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.

2. renovating or repairing, rust, dampness or temperature extremes.

3. inherent defect or faulty manufacture, insect or vermin.

4. breakage, marring, scratching, or denting; unless caused by fire, thieves or vehicular accident.

5. losses excluded under Section I — Property Exclusions that apply to personal property.

This option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit for loss by:

1. theft; or

2. a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option E. Tools.** The special limit of liability applying to tools is increased to the amount shown on the Declarations.

**Option F. Money.** The special limit of liability on money, bank notes, bullion, gold (other than goldware), silver (other than silverware), platinum, coins, stored value cards, smart cards, gift certificates and medals is increased to the amount shown on the Declarations.

**Option G. Securities.** The special limit of liability on securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets is increased to the amount shown on the Declarations.

**Option H. Computers.** The special limit of liability on computers, including hardware and software accessories is increased to the amount shown on the Declarations.

**Option I. Business Property.** The special limit of liability on **business** property is increased to the amount shown on the Declarations. It includes up to $250 of coverage for **business** property off the **residence premises.**

**Option J. Extended Replacement Cost Coverage.** Option J does not increase the policy's limit of liability.

1. Loss to the following property shall be settled at replacement cost or the full cost to repair without deduction for depreciation:

a) property covered under Coverage C — Personal Property.

b) outdoor antennas, carpeting (including wall-to-wall), home appliances, and awnings.

**"Replacement cost"** means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When the identical article is no longer available, **replacement cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

Our liability for loss under this coverage shall be the lesser of:

a) **replacement cost** at the time of loss;

b) full cost of repair;

c) any special limits of liability described in this policy or attached by endorsement; or

d) our cost to repair or replace any part of the damaged or stolen property with equivalent property.

We will not pay more than the **actual cash value** of the damaged or stolen property until it has been repaired or replaced.

2. **You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of the repair cost, **replacement cost,** any special limit of liability that applies or the **actual cash value** of those items. If you later decide to repair or replace those items, **you** may make an additional claim within 180 days after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the 180 days, but payment will not be made until proof of repair or replacement is provided to us.

3. This coverage does not apply to:

a) manuscripts, antiques or fine arts which by their inherent nature cannot be replaced with new articles.

b) memorabilia, souvenirs, collectors' items, and other items whose age and history contribute substantially to their value.

c) property not maintained in good or workable order.

d) property which is obsolete or useless to **you** at the time of loss.

The **actual cash value** provisions of this policy apply to the preceding items 3.a) through 3.d).

**Option K. Replacement Cost Plus (Dwelling) (Increased Coverage A Limit).** When a loss covered by this policy occurs to the dwelling in which you live, located at the **residence premises,** we will settle losses, subject to applicable deductibles, according to the policy provisions.

If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A — Dwelling Limit of Liability, **we** will pay up to a maximum of an additional 20% of the Coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the **residence premises** on the Declarations. This coverage does not increase or affect any other coverage limit or limit of liability in this policy. This additional payment is subject to the following provisions:

**SPECIAL CONDITIONS:**

**You** must:

1. insure the dwelling in which **you** live, located at the **residence premises,** to 100% of the cost to repair or replace it; and

2. accept the annual adjustment in the Coverage A — Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and

3. notify **us** within 90 days of the start of any physical improvements or additions which increase the replacement cost value of **your** dwelling by $5,000 or more and pay any additional premium due.

**You** must comply with these special conditions or **we** will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.

### ORDINANCE OR LAW EXCLUSION

The additional amount provided by this option does not cover any increased cost resulting from enforcement of any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing such debris.

**Option L.** **Protective Device Credit.** For a premium credit, we acknowledge the installation of qualified protection devices on the **residence premises**.

**You** agree to:

1. maintain these devices in working order; and

2. notify **us** promptly, of any changes made in the devices or if they are removed.

**Option M.** **Personal injury Coverage** under **Coverage E — Personal Liability**, the definition of **bodily injury** is amended to include **personal injury**.

**Personal injury** means injury as a result of:

1. false arrest, false imprisonment, wrongful eviction, or wrongful entry;

2. wrongful detention, malicious prosecution, or humiliation;

3. libel, slander, defamation of character; or

4. invasion of rights of privacy.

Section II — Liability Exclusions do not apply to **personal injury**. **Personal injury** coverage does not apply to:

1. liability assumed by an **insured** under a contract or agreement;

2. injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an **insured**;

3. injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the **insured**;

4. injury arising out of or in connection with **business** pursuits of an **insured**;

5. injury arising out of any professional liability;

6. injury resulting from an **insured** transmitting a communicable disease, including injury arising from the possibility of such transmission;

7. civic or public activities performed for pay, other than reimbursement of expenses, by an **insured**; or

8. injury to an **insured** as defined in general Definitions 4.a) and 4.b).

**Option N.** **Loss Assessment Coverage.**

**We** agree to pay **your** share of an assessment charged against all members of the **Association**. "**Association**" means the management body of the property owners. They must have common property interest with **you**. The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:

1. a direct loss to property collectively owned by the **Association**. It must be caused by a peril covered under Section I of this policy;

2. an event of the type covered by Section II of this policy; or

3. damages the **Association** is legally obligated to pay due to **personal injury** as a result of:

   a) false arrest, false imprisonment, wrongful eviction, or wrongful entry;

   b) wrongful detention, malicious prosecution, misrepresentation, or humiliation;

   c) libel, slander, defamation of character; or

   d) invasion of rights of privacy.

This coverage is excess over other valid and collectible insurance covering the **Association**. Loss under subparagraph 1. is subject to the Section I deductible shown on the Declarations.

**Option O. Building Ordinance or Law Coverage.**

We agree to cover the increased cost resulting from any ordinance or law regulating the:

1. construction;

2. repair;

3. renovation;

4. remodeling; or

5. demolition;

of covered building structures damaged by a Peril Insured Against.

**LIMIT OF PAYMENT**

The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the Coverage A — Limit of Liability shown on the Declarations at the time of loss. This is additional coverage.

The damaged or destroyed building structure must be repaired or replaced at the **residence premises.**

**SPECIAL EXCLUSIONS**

We will not pay costs:

1. required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;

2. resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

   However, this exclusion does not apply if the total damage to the covered building structure is more than 50% of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

**Option P. Limited Water Back up of Sewers or Drains Coverage.** We will pay up to a maximum of $5,000 for all damage to:

1. the Coverage A — Dwelling; and

2. the following personal property:

   a) clothes washers and dryers;

   b) food freezers and the food in them;

   c) refrigerators;

0775500004260

63 41 HO 415749

    d) ranges;

    e) portable dishwashers; and

    f) dehumidifiers;

caused by or resulting from water or water-borne material which:

a) backs up through sewers or drains from outside the dwelling's plumbing system; or

b) overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

### EXCLUSIONS

We do not cover:

1. other personal property not specified above;

2. loss caused by the negligence of an **insured**; or

3. if the loss occurs or is in progress within the first five (5) days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

### DEDUCTIBLE

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

**Option Q. Earthquake and Volcanic Eruption Coverage.** We insure for direct physical loss to property covered under Section I — Property Coverages caused by earthquake or volcanic eruption. Volcanic eruption means:

1. eruption;

2. explosion; or

3. discharge;

from a volcano.

One or more earthquake shocks or volcanic eruptions that occur within a 72-hour period will constitute a single earthquake or volcanic eruption.

This coverage does not increase the limits of liability stated in the policy.

### DEDUCTIBLE

The earthquake and volcanic eruption deductibles are shown on the Declarations. It replaces any other deductible provision in this policy for covered earthquake and volcanic eruption loss.

We will pay only that part of the loss over the earthquake deductible percentage shown on the Declarations. The percent deductible applies separately to each coverage limit and applies separately to loss under each Section I coverage. This includes Building Additions and Alterations Coverage if included in the policy. The deductible amount will not be less than the earthquake dollar deductible on the Declarations for any one loss.

### SPECIAL EXCLUSIONS

We do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to, or aggravated by earthquake or volcanic eruption.

**Option R.** **Broad Water Back up of Sewers or Drains Coverage.** We will pay up to the limit of liability, shown on the Declarations for this option, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:

1. backs up through sewers or drains from outside the dwelling's plumbing system; or

2. overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

This is the most we will pay for all covered property under Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property.

### EXCLUSIONS

We do not cover:

1. loss caused by the negligence of an **insured**; or

2. if the loss occurs or is in progress within the first five days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

### DEDUCTIBLE

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.



# *General Policy Conditions*

### 1. HOW YOUR POLICY MAY BE CHANGED
a) Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.
b) Any **insured** will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.
c) A waiver or change of a part of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or examination does not waive **our** rights.
d) The premium for the coverage provided by this policy and attached endorsements is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium.

### 2. CONCEALMENT OR FRAUD
a) This policy is void as to all **insureds** if **you** or any other **insured** has intentionally misrepresented any material fact or circumstance which would have caused **us** not to issue or renew this policy.
b) This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after a loss, has:
   (1) intentionally concealed or misrepresented any material fact or circumstance; or
   (2) committed any fraud or made false statements relating to such loss.

### 3. RENEWAL
This policy is written for a specific policy period as shown on the Declarations. **We** will renew it for successive policy periods subject to the following conditions:
a) Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by **us** at the time.
b) All premiums, premium installment payments and fees must be paid when due.
c) Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us**.
d) **You** agree to an interior inspection of **your** home by one of **our** representatives to determine **your** continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of **your** policy.

### 4. NON-RENEWAL
a) At the end of each policy period, **we** will have the right to refuse to renew this policy.
b) If **we** elect not to renew, **we** will mail written notice to the named **insured**, at the address shown in this policy, at least 30 days before the renewal date of this policy. Proof of mailing shall be proof of notice.
c) For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

### 5. CANCELLATION DURING POLICY PERIOD
Any named **insured** may cancel this policy at any time by returning it to **us** or by notifying **us** in writing of the future date cancellation is to take effect.

0775500000004284

63 41 HO 415749

We may cancel this policy only for the reasons stated in this condition by notifying the named insured in writing of the date cancellation takes effect. This cancellation notice will be mailed to the named insured at the address shown in the policy. Proof of mailing will be proof of notice.

a) When premium has not been paid, whether payable to us or our agent or under a finance or credit plan, we may cancel at any time by giving notice at least 10 days before cancellation takes effect.

b) When this policy has been in effect 60 days or less and is not a renewal with us, we may cancel for any reason by giving notice at least 10 days before cancellation takes effect.

c) When this policy has been in effect for more than 60 days, or at any time if it is a renewal, we may cancel if:

   (1) there has been a material misrepresentation of fact which if known to us would have caused us not to issue this policy, or caused us to issue or renew this policy at a higher premium;

   (2) the risk has changed substantially since the policy was issued; or

   (3) the property or other interest has been transferred to another person, unless the transfer is permissible under the terms of this policy.

   This can be done by giving notice at least 30 days before cancellation takes effect.

d) When this policy is written for a period longer than one year, we may cancel for any reason at its anniversary by giving notice at least 30 days before cancellation takes effect.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after cancellation takes effect.

## 6. POLICY TRANSFER

This policy may be transferred to another only with our written consent.

## 7. SUBROGATION

a) When we have paid you for a loss covered under this policy and you also receive payment for the same loss from another person, entity or organization, the amount received will be held by you in trust for us and reimbursed to us to the extent of our payment.

b) An insured may, before loss occurs, waive in writing all rights of recovery against any person. The insured will provide us with proof of the waiver, when requested by us. If not waived, when we pay a loss, an insured's right to recover from someone else becomes ours up to the amount we paid. An insured must protect these rights and help us enforce them. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

## 8. DEATH

If you die, we continue to insure:

a) the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.

b) a member of your household who is an insured at the time of death, but only while a resident of the residence premises.

c) with respect to your property, the person having proper custody of the property until appointment of a legal representative.

## 9. ADDITIONAL INSURED - NON OCCUPANT

An additional insured may be named in this policy. The additional insured's interest in the residence premises is protected under Coverage A and Coverage B. The additional insured is also protected under Coverage E for liability from the ownership, maintenance, or use of the residence premises. This provision does not increase the amount of insurance.

### 10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

The first named **insured** may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. **Your** agent or sales representative can provide more information.

### 11. **NON-SUFFICIENT FUNDS CHARGE**

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

### 12. **DIVIDENDS**

The first named **insured** is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company — Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the first named **insured** is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the first named **insured** is entitled to one vote only — regardless of the number of policies issued to the first named **insured** — either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday in April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the first named **insured** at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning the first named **insured** is not subject to any assessment beyond the premiums the above companies require for each policy term.

IN WITNESS WHEREOF: Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, or Nationwide Property and Casualty Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary, and countersigned as may be required by a duly authorized representative of the company.

**Secretary**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

**President**
Nationwide Mutual Insurance Company
Nationwide Property & Casualty Insurance Company
Nationwide Mutual Fire Insurance Company

**Secretary**
Nationwide Property & Casualty Insurance Company



Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio 43215-2220

0775500004307

63 41 HO 415749



# sinkhole activity coverage endorsement

**Please attach this important addition to your policy.**

It is agreed that the policy is amended to provide coverage for **sinkhole activity.** Coverage is subject to all terms and conditions in the policy, except as changed by this endorsement. It is agreed that coverage is hereby amended as follows:

### Definitions

**Additional Definition Applicable:** For purposes of this endorsement only:

"SINKHOLE ACTIVITY" means settlement or systematic weakening of the earth supporting property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or other similar rock formation.

### SECTION I- Perils Insured Against

The following is added:

Covered Cause of Loss, COVERAGE C - PERSONAL PROPERTY

**sinkhole activity.** This peril does not include loss caused by **sinkhole activity:**

a) if the dwelling does not sustain physical loss from **sinkhole activity.**

b) if the physical loss to the dwelling does not arise out of, or is not caused by, sudden settlement or collapse supporting the dwelling.

c) unless the sudden settlement or collapse results directly from subterranean voids created by the action of water on limestone or similar rock formation.

### SECTION I- Property Exclusions

Exclusion 1.a) is hereby deleted and replaced with the following:

a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking (other than **sinkhole activity**). Volcanic eruption means: eruption; explosion; or discharge from a volcano.

Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

All other provisions of this policy apply.

This endorsement is issued by the company shown in the Declarations page as the issuing company.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza Columbus, OH 43215-2220**
**Hearing or Voice Impaired: 1-800-622-2421 (TTY only)**
**nationwide.com**

Nationwide and the Nationwide framemark are federally registered service marks of Nationwide Mutual Insurance Company

0775500000314

63 41 HO 415749



# *Identity Theft or Identity Fraud Expenses Coverage*

**Please attach this important addition to your policy.**

In consideration of the premium charged, the policy is amended to provide coverage for **Identity Theft** or **Identity Fraud**. Coverage is subject to all terms and conditions in the policy, except as changed by this endorsement. It is agreed that coverage is hereby amended as follows:

**Additional Definitions applicable:** For purposes of this endorsement only:

1. "IDENTITY THEFT OR IDENTITY FRAUD" means the act of knowingly using or transferring without legal authority personal identifying information of an **insured** such as name, social security number, driver's license number, bank account number(s) or credit card number(s) with the intent to commit, or to aid or abet another to commit, any illegal activity that constitutes a felony under any applicable state or local law or violation of federal law.

2. "EXPENSES" means:

   a. Costs of executing affidavits or similar documents attesting to theft or fraud required by credit grantors, credit agencies or similar financial institutions.

   b. Costs for certified mail to credit grantors, credit agencies, or similar financial institutions and law enforcement agencies.

   c. Lost income resulting from time taken off work to complete theft or fraud affidavits, talk to or meet with credit grantors, credit agencies or similar financial institutions, law enforcement agencies and or legal counsel, up to a maximum of $250 per day. Total payment for lost income is not to exceed $5,000.

   d. Loan application fees for re-applying for a loan or loans where the original application is rejected solely because the lender received incorrect credit information.

   e. Reasonable attorney fees incurred by **you** as a result of **identity theft or identity fraud** to:

      (1) Defend lawsuits brought against an **insured** by financial institutions, merchants, or collection agencies;

      (2) Remove any civil or criminal judgments wrongly entered against an **insured**; and

      (3) Challenge the completeness or accuracy of any information in a consumer credit report.

   f. Charges incurred for long distance telephone calls to law enforcement agencies, merchants, credit grantors, credit agencies or similar financial institutions to report or discuss an actual **identity theft or identity fraud**.

The following additional coverage is added under Section I:

**Identity Theft or Identity Fraud Expenses**

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an **insured**, is considered to be one **identity theft or identity fraud**, even if a series of acts continues into a subsequent policy period.

- **Identity theft or identity fraud** must occur while this coverage is part of **your** policy; and

- **Identity theft or identity fraud** expenses must be incurred while this coverage is part of **your** policy or within 180 days after this coverage is terminated.

H-6133

If this coverage is terminated, our total liability for **expenses** incurred by **you** during the 180 days after the termination will not exceed the amount equaling the difference between the limit at the time coverage terminated and the amount we already reimbursed **you** during that policy period.

We may offer, at our option, to refer **you** to a firm that:

- **you** can authorize to work on your behalf to assist **you** in reporting and addressing the effects of **identity theft or identity fraud** to which coverage applies;

- will consult with **you** on measures **you** might take if **you** reasonably suspect that **you** have already become, or may become, a victim of **identity theft or identity fraud** to which this coverage applies; or

- if **we** do provide **you** with such a referral, **we** will pay, subject to the terms of the referral **we** provide, that firm's charges for the work they perform consistent to the terms of **our** referral, and those charges will not be subject to the limits for **identity theft or identity fraud** coverage.

We will pay up to $25,000 for **expenses** incurred by an **insured** as the direct result of any single **identity theft or identity fraud** first discovered or learned of during the policy period. Our total liability for **identity Theft or identity Fraud Expenses Coverage you** incur during the policy period will not exceed this limit regardless of the number of instances or when they occurred, or the number of persons making a claim for **identity theft or identity fraud.**

This coverage is additional **insurance.**

No deductible applies to **identity Theft or identity Fraud Expenses Coverage.**

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover:

1. **Expenses** arising out of the business pursuits of any **insured.**

2. **Expenses** incurred due to any fraudulent, dishonest or criminal act by an **insured** or any person acting in collusion with an **insured,** or by any authorized representative of an **insured,** whether acting alone or in collusion with others.

3. Loss other than **expenses.**

4. Loss insured under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, under Section I of the policy.

### SECTION I – CONDITIONS

Under "Your Duties after Loss" the following is added:

In case of loss, **you** must submit to **us,** within 60 days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief evidence or affidavit supporting a claim including bills, receipts, or other records that support a claim for **expenses** under identity Theft or identity Fraud Expenses Coverage. It should state the amount and cause of loss.

All other provisions of this policy apply.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**NATIONWIDE INSURANCE COMPANIES**
**One Nationwide Plaza Columbus, OH 43215-2220**
**Hearing or Voice Impaired: 1-800-622-2421 (TTY only)**
**nationwide.com**



 **amendatory endorsement-
insuring agreement**

Please attach this important addition to your policy.

It is agreed that the policy is amended as follows:



Under the Insuring Agreement, the second paragraph is deleted and replaced by the following:

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations. We may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimates are conducted or when the policy renews. To maintain an appropriate amount of coverage, it is your duty to advise us of additions, alterations, or renovations to your dwelling. This policy applies only to loss which occurs while the policy is in force.

All other provisions of the policy apply.

This endorsement is issued by the company shown on the Declarations as the issuing company.



**Nationwide Mutual Insurance Company and Affiliated Companies
One Nationwide Plaza  Columbus, OH  43215-2220
Hearing or Voice Impaired:  1-800-622-2421 (TTY only)
nationwide.com**

Nationwide and the Nationwide framemark are federally registered service marks of Nationwide Mutual Insurance Company

00019
NATIONWIDE INSURANCE
01-19-301
P.O. BOX 182171
COLUMBUS, OH 43218-2171

Nationwide

Your Agent:
KATHRINE R WILSON
(423) 472-0419

6341HO170885

LYNN M LANE
1119 REMUDA CIRCLE
SMYRNA TN 37167-2136

SEP 15, 2011

Dear Valued Customer,

It is Nationwide's goal to provide you with the best possible homeowners protection which includes a periodic review of your insurance coverage to determine if adjustments are necessary. Although the responsibility for making sure a home is insured to its proper value rests with you, the homeowner, Nationwide* has instituted a program, Home Care review, to assist you with this process.

The Home Care Review includes a thorough review of your home's interior and exterior by a professionally trained Nationwide Home Care representative. I am the Home Care representative who will complete the review of your home. I will be working with your agent as part of your local Nationwide support team. When I visit your home, I will calculate an estimated reconstruction cost and identify any safety concerns or issues which could cause a loss.

I will be completing your Home Care review within the next few weeks and will attempt to call you prior to my visit. If you are not present, I will leave materials indicating the review has been completed.

The results of my visit to your home will be reviewed by Nationwide. You will be contacted only if a condition was found that might require a change to the amount of insurance for your home or cause your home to be more susceptible to a loss.

The Home Care review is a free service provided to you as a Nationwide customer. If you have any questions, please contact your agent. Thank you for choosing Nationwide to protect your home.

Terry Watson

Home Care Representative

423-240-1499

*All hazards present on your premises or operation were not necessarily recognized during the review and the review is not intended to assure compliance with state or federal regulations. The maintenance of safe premises, operations and equipment is the legal responsibility of the insured. Nationwide assumes no responsibility for the management or control of the insured safety activities. The calculation of reconstruction costs is intended to provide an estimate of the amount of money needed to replace a home. Actual reconstruction costs may vary. The cost of building materials and construction and other services can vary, depending on availability, geographic area and other factors. Neither the Company, its agents, nor employees shall be liable for any loss other than as covered by the Company. Information gathered during the Home Care review will be used for underwriting purposes.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**Nationwide Insurance Company of Florida ● Nationwide Atlantic Insurance Company**
**Texas Lloyds Insurance Company ● Nationwide Property and Casualty Insurance Company**
**One Nationwide Plaza ● Columbus, Ohio 43215-2220**
**Hearing or Voice Impaired: 1-800-622-2421 (TTY Only)**
**nationwide.com**



00142

KATHRINE R WILSON
COLONY SQUARE
2520 KEITH ST NW STE 8
CLEVELAND TN 37312

08019000142018

63 41 HO 170865

LYNN M LANE
1629 EDGEHILL AVE
CHATTANOOGA TN 37405-2136

# HOMEOWNER CUSTOMER NOTICE

| Policy Number<br>63 41 HO 170885 | Date Prepared<br>FEB 24, 2011 |
|---|---|
| | |

KATHRINE R WILSON
COLONY SQUARE
2520 KEITH ST NW STE 8
CLEVELAND TN 37312

**How to Contact Us**

**Nationwide Representative:**

KATHRINE R WILSON
AGENT NUMBER : 0027707
423-472-0419

LYNN M LANE
1629 EDGEHILL AVE
CHATTANOOGA TN 37405-2136

---

See back of your statement for important phone numbers and other information about your insurance.

**Note:**

The enclosed Declarations confirm change(s) made to your Homeowner Insurance Policy. Please read it carefully. Thank you for insuring with Nationwide.

---

At Nationwide, customer service is a top priority. Whether you are a long time customer or new, we want you to know the high value we place on your business. We consider it a privilege to serve you.

## NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

## **********THIS IS NOT A BILL**********

## NATIONWIDE 24-HOUR CLAIMS NUMBER: 1-800-421-3535

**\*\*\*\*\*\* SPECIAL NOTICE \*\*\*\*\*\***

Please notify your agent immediately if the mortgage company shown on the Declarations is not correct.

# Life comes at you fast <sup>SM</sup> — be ready with Nationwide<sup>®</sup>.

**For Questions About Your Insurance, Call Your Nationwide Agent:**   KATHRINE R WILSON
423-472-0419

**For Hearing Impaired:**   TTY 1-800-622-2421      AGENT NUMBER  27707

**Nationwide Regional Office:**   1-877-669-6877



These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the **other coverages and additional coverage options.**

**Policy Number:**
63 41 HO 170885

**Issued:**
FEB 24, 2011

**Policyholder:**
(Named Insured)
LYNN M LANE
1629 EDGEHILL AVE
CHATTANOOGA TN 37405-2136

**Policy Period From:**

MAY 10, 2010 to MAY 10, 2011 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.



**Change Effective Date:**
FEB 21, 2011

**The Following Change(s) Have Been Made To Your Policy:**

This revised Declarations reflects recent changes made to your Insurance Policy.

**Residence Premises Information:**

LYNN M LANE
1629 EDGEHILL AVE
CHATTANOOGA
TN 37405-2136

ONE FAMILY
FRAME DWELLING
YEAR OF CONSTRUCTION 1930
SECONDARY DWELLING

PROTECTION CLASS 2
RATED PROTECTION CLASS 2
INSIDE SINGLE CLASS AREA
WITHIN 1000 FT FROM HYDRANT
WITHIN 5 MILES FROM FIRE DEPT
PROTECTION TERRITORY 032

## SECTION I

| Property Coverages | | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|---|
| COVERAGE-A-DWELLING | $ | 192,600 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-B-OTHER STRUCTURES | $ | 19,260 | |
| COVERAGE-C-PERSONAL PROPERTY | $ | 134,820 | |
| COVERAGE-D-LOSS OF USE | $ | 192,600 | |

## SECTION II

Section II Liability Coverages not provided by this policy.

08019000142032

63 41 HO 170885

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
|   BOECKH INDEX 0632.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 5,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

| **Options Applicable** | |
|---|---|
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
|   PERSONAL PROPERTY | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
|   DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
|   LOCAL FIRE OR SMOKE ALARM SYSTEMS | |
|   FIRE EXTINGUISHERS | |
|   DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |

## PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ 722.00 |
| Annual Premium | $ 722.00 |

Annual Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME/CAR
HOME PROTECTIVE DEVICE
SECONDARY DWELLING

## FORMS and ENDORSEMENTS MADE PART OF POLICY

| HO 41-A | Homeowners Policy |
|---|---|
| H-6145 | Sinkhole activity coverage - Amendatory Endorsement |
| H-6146 | Amendatory Endorsement |

## ADDITIONAL INTERESTS

### FIRST MORTGAGEE

CITIMORTGAGE INC
ISAOA ATIMA
PO BOX 7706
SPRINGFIELD OH 45501-7706
LOAN #5001927857



**Nationwide**

**Policy Number:**
63 41 HO 170885

**Issued:**
FEB 24, 2011

**Policyholder:**
(Named Insured)
LYNN LANE

**Policy Period From:**
MAY 10, 2010 TO MAY 10, 2011

0801800014 2049

63 41 HO 170885

**Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY**
**Countersigned At: RALEIGH, NC**
Prior Declaration Issued: AUG 13, 2010

**Home Office — Columbus, Ohio**
**By: KATHRINE R WILSON**

## IMPORTANT PHONE NUMBERS

**Nationwide 24-Hour Claims Number: 1-800-421-3535**

**For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: KATHRINE R WILSON**
**423-472-0419**

**For Hearing Impaired: TTY 1-800-622-2421**

**Nationwide Regional Office: 1-877-669-6877**

**CIRCUIT COURT OF TENNESSEE**
**ELEVENTH JUDICIAL DISTRICT**
**HAMILTON COUNTY**

| | |
|---|---|
| LYNN M. LANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Case No.** 12C473 |
| v. | ) |
| | ) **Division** _____ |
| NATIONWIDE MUTUAL FIRE | ) |
| INSURANCE COMPANY, | ) **JURY DEMANDED** |
| | ) |
| Defendant. | ) |

FILED IN OFFICE
2012 APR -9 PM 3: 36
PAULA T. THOMPSON, CLERK
BY _____ DC

## COST BOND

The undersigned acknowledges and hereby binds Chambliss, Bahner & Stophel, P.C.,

1000 Tallan Building, Two Union Square, Chattanooga, Tennessee 37402-2500, for the payment

of all costs in this Court which may at any time be adjudged against Plaintiff in the event said

Plaintiff shall not pay the same if so ordered by this Court.

Witness my hand this $\underline{9^{th}}$ day of April, 2012.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By _____
    William R. Dearing (BPR #014293)
    Jeffrey G. Granillo (BPR #027259)
    1000 Tallan Building
    Two Union Square
    Chattanooga, TN 37402
    Telephone: (423) 757-0249
    Facsimile: (423) 508-1249
    *Attorneys for Plaintiff*

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**robert.walker@tn.gov**

May 15, 2012

Nationwide Mutual Fire Insurance Company      Certified Mail
800 S. Gay Street, Ste 2021, % C T Corp.      Return Receipt Requested
Knoxville, TN  37929-9710                     7011 2970 0003 4362 5570
NAIC # 23779                                  Cashier # 2715

Re:    Lynn M Lane   V.   Nationwide Mutual Fire Insurance Company

       Docket # 12C473

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 13, 2012, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Joe Walker
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Hamilton County
    625 Georgia Avenue, Rm 500
    Chattanooga, Tn  37402

# STATE OF TENNESSEE
## In the Circuit Court of Hamilton County, Tennessee

Lynn M. Lane, Plaintiff

vs.

Nationwide Mutual Fire Insurance Co.

NO. 12C473

FILED IN OF

2012 APR -9 PM

PAULA L. THOMPSON,

BY

## SUMMONS

TO: <u>Nationwide Mutual Fire Insurance Co  c/o TN Insurance Commissioner via certified mail</u>
Defendant        Address

<u>500 James Robertson Parkway, 5th Floor</u>
Defendant        Address

<u>Nashville, Tennessee 37243-0000</u>
Defendant        Address

You are hereby summoned to answer and make defense to a Complain which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this ___9th___ day of ___April___ , 2012.

Circuit Court Clerk

By _____

Deputy Circuit Court Clerk

ATTORNEYS FOR DEFENDANT <u>William R. Dearing, Chambliss, Bahner & Stophel, P.C., 1000 Tallan</u>

<u>Building, Two Union Square, Chattanooga, Tennessee 37402-2500</u>
**Address**

PLAINTIFF'S ADDRESS:    <u>1119 Remuda Circle, Smyrna TN  37167</u>

Received this _____ day of _____, 20__ _____

/S/_____

Deputy Sheriff

## COST BOND

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

Witness my hand this ____ day of _____, 2012.

BY: _____

Chambliss, Bahner & Stophel, P.C.,

1000 Tallan Building, Two Union Square,

Chattanooga, Tennessee 37402-2500

Address

LYNN M. LANE,                          )
                                       )
          Plaintiff,                   )    Case No. 12C473
                                       )
v.                                     )    Division II
                                       )
NATIONWIDE MUTUAL FIRE                 )    Jury Demanded
INSURANCE COMPANY,                     )
                                       )
          Defendant.                   )

## MOTION FOR DEFAULT JUDGMENT

Plaintiff, Lynn M. Lane, by and through counsel, and pursuant to Tenn. R. Civ .P. 55, respectfully moves this Court for an order granting default judgment against Defendant. In support of her Motion for Default Judgment, Plaintiff shows the Court as follows:

   i)    On April 9, 2012, Plaintiff filed a Complaint against the Defendant.

   ii)   On April 13, 2012, Defendant was served with a copy of the Summons and Complaint in this action, as evidenced by the Affidavit of Service filed with the Clerk of this Court on May 12, 2012.

   iii)  The period to Answer provided by Tennessee Rule of Civil Procedure 12.01 has lapsed and Defendant has failed to answer or file a responsive pleading.

   **WHEREFORE,** Plaintiff respectfully requests that the Court:

   **(1)** enter default judgment against the Defendant;

   **(2)** set this matter for hearing on Plaintiff's damages as soon as possible; and

   **(3)** provide any other general relief to which Plaintiff is entitled.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.,

By
Jeffrey G. Granillo (BPR #027259)
1000 Tallan Building
Two Union Square
Chattanooga, TN 37402-2500
Telephone (423) 756-0264
Facsimile (423) 508-1264

*Attorneys for Plaintiff Lynn Lane*

## NOTICE OF HEARING

**This motion will be heard on Monday, June 11, 2012 at 9:00 a.m. in Hamilton County Circuit Court, Division II.**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing pleading upon

the following individual(s) via Certified United States Mail, postage prepaid, and correctly

addressed as follows:

Nationwide Mutual Fire Insurance Co.
c/o TN Insurance Commissioner
500 James Robertson Parkway, 5th Floor
Nashville, TN 37243

This $31\frac{st}{}$ day of May, 2012.



LAW OFFICES
# GKH
## GRANT KONVALINKA & HARRISON, P.C.

Ninth Floor, Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450-0900

Writer's E-Mail Address
tcammon@gkhpc.com

Telephone 423/756-8400
Facsimile 423/756-6518
www.gkhpc.com

June 11, 2012

BY HAND DELIVERY

Honorable Paula T. Thompson
Hamilton County Circuit Court Clerk
500 Hamilton County Courthouse
Chattanooga, Tennessee 37402

   Re: *Lynn M. Lane v. Nationwide Mutual Fire Insurance Company*, No. 12 C
     473, Circuit Court, Hamilton /County, Tennessee

Dear Ms. Thompson:

   This firm has been retained to represent Nationwide Mutual Fire Insurance
Company in the captioned case. Please enter this firm as counsel for Nationwide.

        Very truly yours,

        Tonya Kennedy Cammon

P:\Folders 1-Z\n311\003\06-11-12 Appearance Ltr to clerk.doc

cc: William R. Dearing, Esq.
   Jeffrey G. Granillo, Esq

FILED IN OFFICE

12 JUN 15 AM 11: 02

PAULA T. THOMPSON, CLERK

BY _____

LYNN M. LANE,                         NO. 12 C 473

    Plaintiff.                        CIRCUIT COURT

v.                                    HAMILTON COUNTY,

NATIONWIDE MUTUAL FIRE                TENNESSEE
INSURANCE COMPANY,
                                      DIVISION II
    Defendant.
                                      JURY DEMAND

## AGREED ORDER TO SET ASIDE DEFAULT JUDGMENT

The Court, pursuant to Tennessee Rules of Civil Procedure 55.02 and 60.02, for good cause shown, hereby enters this Order to set aside the default judgment previously granted to Lynn M. Lane ("Ms. Lane" or "Plaintiff") against Nationwide Mutual Fire Insurance Company ("Nationwide" or "Defendant").

ENTERED, this ___15th___ day of June, 2012.

_____
JUDGE

*(Attorney Signatures Follow)*

APPROVED FOR ENTRY:

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:

William R. Dearing, BPR No. 014293
Jeffrey G. Granillo, BPR No. 027259
Attorneys for Plaintiff Lynn M. Lane
1000 Tallan Building
Two Union Square
Chattanooga, Tennessee 37402
(423) 756-3000

GRANT, KONVALINKA & HARRISON, P.C.

By: Tonya Kennedy Cammon

Tonya Kennedy Cammon, BPR No. 16213
Attorneys for Defendant
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900
(423) 756-8400