UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| LYNN M. LANE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:12-cv-191 |
| | ) | |
| v. | ) | Collier / Carter |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT AND SCHEDULING ORDER

Plaintiff Lynn M. Lane ("Plaintiff") moves the Court under Federal Rule of Civil Procedure 15(a), for leave to amend her Complaint [Doc. No. 1] to raise new claims for negligent and intentional inflectional of emotional distress. These claims arose after suit was filed when Defendant threatened to cancel Plaintiff's homeowner's policy on at least *four* separate occasions, knowing that such activities were harming Plaintiff's physical and mental health.

In tandem with her Motion to Amend Complaint, Plaintiff also moves this Court under Federal Rule of Civil Procedure 16(b) to amend its Scheduling Order to permit the Parties to conduct discovery on these new claims. No prejudice will arise from either amendment and it will permit the Parties to resolve their dispute on a more efficient basis. Plaintiff will not have to file a second lawsuit to pursue these claims. Leave to amend should be granted.

# FACTUAL BACKGROUND OF DISPUTE

**A. Plaintiff Purchased a Homeowner's Policy From Defendant; Defendant Failed to Remedy Storm Damage, a Covered Loss.**

Defendant sold Ms. Lane a homeowner's insurance policy for Ms. Lane's home located at 1629 Edgehill Avenue, Chattanooga, Tennessee. [Court Doc. 1, Exhibit 1 to Pl.'s Comp.]

In February 2011, a storm struck the residence and caused a tree to fall on the home. [Ex. 1, Photograph of Lane home struck by tree]. Defendant directed that a tarp be placed on the roof, but took no direct action to repair the hole for several months. The residence was uninhabitable and structurally unstable.

Prior the storm damage, Ms. Lane had purchased a home in Nashville and was preparing to move from Chattanooga to Nashville, where her children resided. She was preparing to list her Chattanooga residence with a reputable realtor when the first storm struck. Following the February 2011 storm damage, Ms. Lane was forced to stay in a Chattanooga hotel on a temporary basis and was told by Nationwide that she would be reimbursed for the hotel expenses. Over a year later, Defendant sent Plaintiff a *partial* reimbursement for her hotel expenses. On or about March 1, 2011, Defendant placed a lock box on the home, giving it 24 hour access to the residence.

Being unable to live in the Chattanooga home, Ms. Lane ultimately moved to Nashville. However, all of her possessions remained confined to the Chattanooga home. Ms. Lane had no bed, and purchased a blow up mattress. Because the Nashville home had no furniture and no blinds, she began sleeping in her walk-in closet in Nashville. Ms. Lane did not have the funds to maintain two households. Nationwide was to make arrangements to extract the contents from the Chattanooga home and place them in a "POD." That also never occurred.

20192_00/1201/JGG-1489259_1

After many weeks, Ms. Lane requested that Nationwide advance her funds so she could purchase a bed to sleep on while Nationwide allegedly took efforts to repair her Chattanooga home and preserve her belongings. After receiving assurances that the purchase would be reimbursed, Ms. Lane purchased a new bed. No check was ever sent to Ms. Lane.

In April 2011, a second storm struck the Chattanooga residence. The storm blew the tarp off the home and caused rain to pour in, causing significant additional damage. The home's wood floors were ruined and Nationwide hired personnel who piled Ms. Lane's personal, treasured, soaked effects into the home's second bedroom.

From February 2011 through February 2012, Ms. Lane continued to communicate with Defendant concerning the status of the repairs. Nationwide was aware that Ms. Lane was carrying two mortgages on the two homes as Nationwide was the insurer for both homes. At each instance, Ms. Lane was assured that work was being done to repair the Chattanooga residence. Ms. Lane checked on the home constantly and found that little or no work was being performed on the home. With each month, the mental, and emotional toll on Ms. Lane continued to increase. All of her retirement savings were being quickly depleted by Nationwide's delays.

In April 2012, finding that the repair work was still not completed and the home remained uninhabitable, Ms. Lane filed suit against Nationwide for breach of contract, bad faith denial of policy benefits, and violations of the Tennessee Consumer Protection Act.

**B. Following Suit, Nationwide Repeatedly Attempts to Improperly Cancel Ms. Lane's Homeowner's Policy.**

In May 2012, Ms. Lane received a notice stating that Nationwide was cancelling her insurance policy. [Collective Ex. 2 at pp. 1-2]. The basis for the cancellation provided by Nationwide was that the home was "severely weathered". [Collective Ex. 2 at p. 1]. This news

took a significant mental and emotional toll on Ms. Lane. Ms. Lane could not sleep due to the stress. Ms. Lane informed Nationwide that the cited repairs were caused by Nationwide's failure to fix the home. Desperate to maintain her policy, Ms. Lane did all that she could to remedy the situation. She arranged and dispatched someone to paint a segment of the home and informed Nationwide's agent that the requested repairs had been made. Nationwide's agent in turn informed Ms. Lane that the policy would not be cancelled in light of her efforts.

On or about June 5, 2012, Ms. Lane was sent a "supplemental" insurance application to complete. [Collective Ex. 2 at pp. 21-24]. Ms. Lane reviewed the application and discovered that the application contained inaccurate information. Ms. Lane informed Nationwide's representative of the inaccuracies, but was told by Nationwide's agent to "sign the document anyway" otherwise her homeowner's policy would be cancelled. Notably, the documentation also provided that a false declaration would permit Defendant to "void some or all" Ms. Lane's coverage. [Collective Ex. 2 at p. 24].

The threat of cancellation deeply worried Ms. Lane. In light of the condition of the home, Ms. Lane knew the home was uninsurable in its current state by any other provider and that maintaining coverage was a requirement imposed by her mortgage holder. In the event the insurance lapsed, Ms. Lane believed she would incur significant penalties from her mortgage holder. The burden of maintaining two mortgages had, at this point, depleted Ms. Lane's savings and retirement account, making her particularly vulnerable to such penalties and fees.

On June 14, 2012, Counsel for Plaintiff sent correspondence to Nationwide's Counsel informing Defendant's Counsel of the situation and requested that Nationwide agree to maintain coverage through the term of the litigation under the same terms and conditions. [Collective Ex.

2 at pp. 3-4]. On June 19, Nationwide's Counsel responded, stating that coverage would be maintained. [Collective Ex. 2 at p. 5].

On August 3, 2012, Nationwide, as a follow-up to its earlier May 2012 cancellation notice, sent Ms. Lane a second written notice stating that her homeowner's policy would be cancelled at "12:01 a.m. local time, August 18, 2012." [Collective Ex. 2 at pp. 6-7]. Nationwide's agent apparently failed to transmit the photographs and related documentation of the repairs Ms. Lane had performed at the direction of Nationwide's agent. This information was to ensure that the policy would not be under threat of cancellation. On August 13, 2012, Ms. Lane sent a written response to Nationwide, mailing the response to Nationwide's president, and local agent. [Collective Ex. 2 at p. 8]. In the letter she thoroughly outlined for Nationwide her on-going physical and mental suffering caused by Nationwide's repeated failures. She noted that, "Upon reading the notice I had chest pains and numbness in the left side of my face/can't sleep and have large open sores in my mouth, nose and head. I am so sick." [Collective Ex. 2 at p. 8].

On August 16, 2012, Ms. Lane's Counsel notified Nationwide's Counsel that another cancellation notice was received and that the latest notice had "taken a significant toll on Ms. Lane's health." [Collective Ex. 2 at p. 9]. Ms. Lane's Counsel informed Nationwide's Counsel that if Nationwide was not agreeable to maintaining coverage, the matter would have to be brought to the Court's attention. Id. Nationwide's Counsel responded that the notice "went out in error" and that coverage would continue. [Collective Ex. 2 at p. 15]. On September 4, 2012, Counsel for Nationwide sent correspondence *confirming* receipt of Ms. Lane's August 13 letter by Nationwide's national office in Columbus, Ohio. [Collective Ex. 2 at p. 17].

Incredibly, on October 11, 2012, Nationwide sent Ms. Lane a third written notice of cancellation, alleging that she had not paid the insurance premium on the home. [Collective Ex.

2 at pp. 18-22]. Prior to receipt of this notice, Nationwide's adjuster acknowledged payment and informed Ms. Lane that the payment would be properly applied. It was not. Upon receiving the latest cancellation notice from Nationwide, Ms. Lane suffered severe and extreme emotional trauma. She is seeking professional medical help to cope with the severe emotional distress that was negligently, recklessly and intentionally caused by Nationwide.

Ms. Lane now moves for leave of Court to amend her Complaint and extend all outstanding deadlines provided in the Scheduling Order, including the trial date, nine months to allow the Parties to conduct discovery on these new claims. Plaintiff also requests an opportunity to seek professional help to stabilize her fragile emotional state caused by Defendant.

## ARGUMENT

### A. This Court Should Permit Plaintiff to Amend Her Complaint Under Rule 15.

Amendment of Plaintiff's Complaint should be permitted because Plaintiff has a new claim that arose from Nationwide's conduct after her Complaint was filed and the Scheduling Order [Court Doc. 6] was entered.

Rule 15(a)(2), Federal Rules of Civil Procedure, governing amended and supplemental pleadings, provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires."

In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court set forth the standard to be applied in determining whether leave to amend a complaint should be granted, stating:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc. – the leave sought should, as this rule requires, be "freely given."

*Id.* at 182.

Of the pertinent factors identified by the courts, prejudice to the opposing party is the most important to consider in determining whether leave to amend should be granted:

> However, unlike amendments as of course, amendments under Rule 15(a)(2) may be made at any stage of the litigation. The only prerequisites are that the district court have jurisdiction over the case and an appeal must not be pending. If these two conditions are met, the court will proceed to examine the effect and the timing of the proposed amendments to determine whether they would prejudice the rights of any of the other parties to the suit. If no prejudice is found, then leave normally will be granted.
> 6 C. Wright et al., Federal Practice and Procedure § 1484 (2010).

Plaintiff satisfies the standard for amending the Complaint under Rule 15. Plaintiff seeks to amend her Complaint to raise new claims against Defendant that developed after Plaintiff filed her original Complaint. The repeated threats by Defendant to cancel Ms. Lane's policy, knowing that such threats were taking a significant toll on her health and mental wellbeing were, and are, outrageous and, at a minimum, grossly negligent. Ms. Lane is currently seeking professional treatment in connection with the Defendant's actions.

The Defendant will not be prejudiced by the Amendment. Defendant has taken no depositions and served no discovery. The Amendment should be granted.

### B. **This Court Should Modify its Scheduling Order under Rule 16 in Light of the New Claims that Have Arisen During the Pendency of the Suit.**

The new claims that have arisen during the pendency of the case justifies amending the scheduling order to facilitate additional discovery concerning these new claims. Federal Rule of Civil Procedure 16(b)(4) permits a modification to a scheduling order for "good cause" and with the judge's consent.

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence

in attempting to meet the case management order's requirements." Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002). An additional consideration is possible prejudice to the party opposing the modification. Id.; see also Hometown Folks, LLC v. S&B Wilson, Inc., No. 1:06-cv-81, 2007 WL 3069639 (E.D. Tenn. Oct. 18, 2007) ("Whether a party has good cause is based on two factors: whether the party diligently attempted to meet the scheduling order's deadlines and whether the opposing party will suffer prejudice if the amendment is allowed.").

Plaintiff satisfies the standard for amending the Scheduling Order [Court Doc. 6] under Rule 16. Plaintiff has diligently attempted to meet the Scheduling Order's requirements. Plaintiff served her initial disclosures on July 27. Defendant served its initial disclosures on July 31. Plaintiff served written discovery on Defendant on July 5 and Defendant served responses on August 20. Plaintiff has been working on scheduling Defendant's depositions since September 21. In short, Plaintiff has been diligently and vigorously pursuing this matter.

Defendant will not be prejudiced by Plaintiff's amendment. No depositions have been taken. Indeed, scheduled depositions were postponed because of Ms. Lane's deteriorating mental state. Defendant has served no written discovery. Amending the Complaint and extending the applicable deadlines before Plaintiff is deposed will permit Defendant to depose Plaintiff on all issues in dispute between the Parties.

It is far more economical and efficient to amend the Complaint at this juncture rather than initiate a separate lawsuit to pursue these new claims.

## CONCLUSION

After Plaintiff sued Defendant, Defendant repeatedly threatened to cancel Defendant's homeowner's policy, knowing that she could not obtain coverage from any other provider. Defendant's conduct has rendered the home uninhabitable and uninsurable. Defendant was

provided notice that such conduct was taking a significant toll on Plaintiff's physical and mental health and wellbeing. It continued to send Plaintiff cancellation notices to the point of inflicting and causing Plaintiff severe emotional trauma. Plaintiff is seeking professional help.

Plaintiff now seeks to amend her Complaint to assert new claims for negligent and intentional infliction of emotional distress. Plaintiff also requests that this Court hold a new case management conference to establish new deadlines that will permit her to seek medical attention and also permit the Parties to pursue discovery concerning these new claims.

Accordingly, for all the foregoing reasons, Plaintiff respectfully moves for leave to file an Amended Complaint and for modification of the case Scheduling Order [Court Doc. 6].

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: *s/Jeffrey G. Granillo*
William R. Dearing (BPR #14293)
Jeffrey G. Granillo (BPR#27259)
1000 TallanBuilding
Two Union Square
Chattanooga, TN37402-2500
Telephone: 423.757.0264
Facsimile: 423.508.1264
Email: wdearing@cbslawfirm.com
Email: jgranillo@cbslawfirm.com
*Attorneys for Plaintiff, Lynn M. Lane*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and exact copy of the foregoing has been served via the Electronic Case Filing system of the United States District Court for the Eastern District of Tennessee, which will automatically send email notification of such filing to the following attorneys of record:

       Tonya K. Cammon
       Grant, Konvalinka & Harrison, P.C.
       Ninth Floor, Republic Center
       633 Chestnut Street
       Chattanooga, TN 37450
       Email: tcammon@gkhpc.com

                                      */s/ Jeffrey G. Granillo*
                                        Jeffrey G. Granillo