UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| LYNN M. LANE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:12-cv-191 |
| | ) | |
| v. | ) | Collier / Carter |
| | ) | |
| NATIONWIDE MUTUAL FIRE | ) | Jury Demanded |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST SUPPLEMENTAL COMPLAINT

Plaintiff, Lynn M. Lane, ("Plaintiff") by and through counsel, sues Defendant Nationwide Mutual Fire Insurance Company (hereafter referred to as "Defendant"), and for her cause of action states as follows:

### PARTIES

1. Plaintiff is a citizen and resident of Rutherford County, Tennessee.

2. Defendant Nationwide is an insurance company, licensed to do business and is doing business in Tennessee, and may be served with process through the Commissioner of Insurance for the State of Tennessee.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a), as this case has been removed from a state court in the district and division embraced by this Court. Further, venue is also proper under 28 U.S.C. § 1391(a) because a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in Hamilton County, Tennessee, which falls within this judicial district.

## FACTS

5. On or about February 28, 2011, a tree struck Plaintiff's home located at 1629 Edgehill Avenue, Chattanooga, Tennessee. At the time of the incident, Plaintiff's home was insured by Defendant. A copy of Plaintiff's homeowner's insurance policy is attached hereto and incorporated herein as **Exhibit A** to this Complaint.

6. Upon her discovery of the above-referenced facts, Plaintiff properly and promptly notified Defendant, and took all necessary actions to submit a claim for damage caused by the event. Defendant inspected the premises, placed a tarp over the roof, but failed to take any additional action.

7. On April 27, 2011, a tornado and storm struck the Chattanooga area and caused significant damage to the residence and the contents of Plaintiff's home. At such time, Defendant had failed to take steps to remedy the prior damage and allowed a hole in the roof to fester. As a result, the April 27, 2011 storm caused tremendous damage to the home. Upon discovery of the above-referenced facts, Plaintiff properly and promptly notified Defendant, and took all necessary actions to submit a claim for the above-referenced damages.

8. Defendant failed to take necessary and appropriate steps to remedy the damage covered by Plaintiff's insurance policy. Defendant made multiple demands on Defendant to pay for and remedy the damage covered by the home owner's policy. Defendant has failed to remedy the damage and failed to reimburse Plaintiff for the covered loss. The failure of Defendant to take appropriate action has caused ongoing damage to Plaintiff's home and its contents, rendering them a total loss. The home remains uninhabitable.

9. After filing this lawsuit, Plaintiff received a notice in May 2012 stating that Defendant was cancelling her insurance policy on the alleged basis that the home was "severely weathered." A true and correct copy of May 2012 notice is attached hereto as **Exhibit B**.

10. Upon receiving the notice, Plaintiff suffered significant mental and emotional distress and could not sleep due to the stress.

11. Plaintiff informed Defendant that the cited repairs were caused by Defendant's failure to fix the home. Notwithstanding Defendant's failures, Plaintiff undertook efforts to maintain her policy in response to the May 2012 notice. She arranged and dispatched someone to paint a segment of the home and informed Defendant's agent that the requested repairs had been made. Defendant's agent in turn informed Plaintiff that the policy would not be cancelled in light of her efforts.

12. Plaintiff subsequently received a "supplemental" insurance application from Defendant on or about June 15, 2012 which Defendant requested that Plaintiff complete. A true and correct copy of the June 5, 2012 "supplemental" insurance application is attached as **Exhibit C**. Plaintiff reviewed the application and discovered that the application contained inaccurate information. Plaintiff informed Defendant's representative of the inaccuracies, but was told by Defendant's agent to "sign the document anyway" or otherwise her homeowner's policy would be cancelled. Notably, the documentation also provided that a false declaration would permit Defendant to "void some or all" of Plaintiff's coverage.

13. Plaintiff remained deeply worried by Defendant's threats of cancellation of her policy. In light of the condition of the home, Plaintiff knew the home was uninsurable in its current state by any other provider and that maintaining coverage was a requirement imposed by her mortgage holder. In the event the insurance lapsed, Plaintiff believed she would incur

significant penalties from her mortgage holder. The burden of maintaining two mortgages had, at this point, depleted Plaintiff's savings and retirement account, making her particularly vulnerable to such penalties and fees.

14. On June 14, 2012, Counsel for Plaintiff sent correspondence to Defendant's Counsel informing Defendant's Counsel of the situation and requested that Defendant agree to maintain coverage through the term of the litigation under the same terms and conditions. A true and correct copy of the June 14, 2012 correspondence is attached as **Exhibit D**.

15. On June 19, 2012 Defendant's Counsel responded, stating that coverage would be maintained. A true and correct copy of the June 10, 2012 correspondence is attached as **Exhibit E**.

16. Despite Plaintiff's transmission to Defendant's agent of photographs and related documentation of the repairs Plaintiff had performed on her home in response to the May 2012 cancellation notice and Defendant's assurances on June 10, 2012 that Plaintiff's policy would not be cancelled, Defendant, as a follow-up to its earlier May 2012 cancellation notice, sent Plaintiff a second written notice dated August 3, 2012, stating that her homeowner's policy would be cancelled at "12:01 a.m. local time, August 18, 2012." A true and correct copy of the August 3, 2012 notice is attached as **Exhibit F**.

17. On August 13, 2012, Plaintiff sent a written response to Defendant, mailing the response to Defendant's president, and local agent. A true and correct copy of the August 13, 2012 correspondence is attached as **Exhibit G**. In the letter, Plaintiff thoroughly outlined for Defendant that she was suffering on-going physical and mental distress caused by Defendant's repeated failures and unwarranted notices of cancellation. Plaintiff explicitly informed

4

Defendant that "[u]pon reading the notice I had chest pains and numbness in the left side of my face/can't sleep and have large open sores in my mouth, nose and head. I am so sick."

18. On August 16, 2012, Plaintiff's Counsel notified Defendant's Counsel that another cancellation notice was received and that the latest notice had "taken a significant toll on Plaintiff's health." A true and correct copy of the August 16, 2012 correspondence is attached as **Exhibit H**. Plaintiff's Counsel informed Defendant's Counsel that if Defendant was not agreeable to maintaining coverage, the matter would have to be brought to the Court's attention. Defendant's Counsel responded that the notice "went out in error" and that coverage would continue.

19. On September 4, 2012, Counsel for Defendant sent correspondence *confirming* receipt of Plaintiff's August 13 letter by Defendant's national office in Columbus, Ohio. A true and correct copy of the September 4, 2012 correspondence is attached as **Exhibit I**.

20. Despite being explicitly informed by Plaintiff that Defendant's unwarranted failures and cancellation notices were causing Plaintiff's significant mental distress, Defendant sent Plaintiff a third written notice of cancellation on October 11, 2012, alleging that she had not paid the insurance premium on the home. A true and correct copy of the October 11, 2012 notice is attached as **Exhibit J**.

21. Prior to Plaintiff's receipt of the October 11, 2012 notice, Defendant's adjuster had acknowledged payment from Plaintiff and informed Plaintiff that the payment would be properly applied.

22. Upon receiving the latest cancellation notice from Defendant, Plaintiff suffered further severe and extreme emotional trauma that requires professional medical treatment.

## CAUSES OF ACTION

### Count 1-Breach of Contract

23. Plaintiff incorporates Paragraphs 1 through 22 of her First Supplemental Complaint as fully set forth herein.

24. The homeowner's policy that Plaintiff obtained from Defendant is a legal, binding contract that is ordered by consideration and enforceable by a court of law.

25. Defendant has failed to honor and breached the contract.

26. As a proximate result of Defendant's breaches, Plaintiff has suffered damages as a result in an amount to be proven at trial.

### Count 2-Bad Faith

27. Plaintiff incorporates Paragraphs 1 through 26 of her First Supplemental Complaint as fully set forth herein.

28. Plaintiff has made repeated demands for Defendant to honors its obligations and pay for all damages owed Plaintiff under the applicable home owner's policy.

29. Defendant has and continues to refuse to pay Defendant for her damages.

30. Defendant's refusal to honor Plaintiff's claim and its related conduct constitutes a "bad faith" denial of benefits, as defined in and prohibited by Tenn. Code Ann. § 56-7-105, et seq.

31. Defendant's further refusal to pay its obligations has inflicted additional injury, expense and loss on Plaintiff.

### Count 3-Violations of the Tennessee Consumer Protection Act

32. Plaintiff incorporates Paragraphs 1 through 31 of her First Supplemental Complaint as fully set forth herein.

6

33. Defendant's conduct in the course of marketing the policy and handling the claim also is in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq., entitling Plaintiff to attorneys' fees, treble damages and costs.

### Count 4-Negligent Infliction of Emotional Distress

34. Plaintiff incorporates Paragraphs 1 through 33 of her First Supplemental Complaint as fully set forth herein.

35. Defendant owed Plaintiff a legal duty.

36. Defendant breached its duty to Plaintiff by continually, negligently, and intentional acting to terminate Plaintiff's insurance policy, with knowledge that such acts were and/or likely to cause Plaintiff to suffer severe emotional trauma. Such acts were extreme and outrageous and were such that they would objectively cause emotional harm.

37. Plaintiff suffered severe mental injury arising from Defendant's reckless conduct, which was factually and proximately caused by Defendant's conduct.

### Count 5-Intentional Infliction of Emotional Distress

38. Plaintiff incorporates Paragraphs 1 through 38 of her First Supplemental Complaint as fully set forth herein.

39. The Defendant's conduct in repeatedly attempting to cancel Plaintiff's homeowner's policy, with knowledge that such acts were severely harming Plaintiff's physical and emotional health and inflicting severe emotional suffering, was outrageous, intentional and reckless.

40. Defendant's conduct was and is so outrageous that it is not tolerated by a civilized society.

41. Defendant's conduct caused serious mental injury to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the foregoing premises considered, Plaintiff prays as follows:

1. That process issue and be served upon Defendant requiring it to answer within the time allowed by law;

2. That a jury be impaneled to hear this cause;

3. That judgment be entered for Plaintiff and against Defendant for all damages in an amount deemed reasonable and just by the jury, plus all bad faith penalties allowed by Tenn. Code Ann. § 56-7-105 et seq.;

4. That Plaintiff be awarded reasonable attorneys' fees incurred as a result of Defendant Nationwide's conduct;

5. That Plaintiff be awarded her attorneys' fees, costs and treble damages under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq.;

6. That the costs of this cause, both discretionary and non-discretionary, be taxed against the Defendant;

7. That Plaintiff be awarded compensation for her mental and emotional suffering in an amount to be determined at trial;

8. That Plaintiff be awarded punitive damages arising from Defendant's intentional, outrageous and reckless conduct; and

9. That Plaintiff be awarded any and all other and further relief to which she is entitled under the laws of the State of Tennessee, including, but not limited to, prejudgment issues to the maximum extent allowed by law.

Respectfully submitted,

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

By: _/s/ Jeffrey G. Granillo_
    William R. Dearing (BPR #14293)
    Jeffrey G. Granillo (BPR#27259)
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37402-2500
Telephone: 423.757.0264
Facsimile: 423.508.1264
Email: wdearing@cbslawfirm.com
Email: jgranillo@cbslawfirm.com
*Counsel for Plaintiff Lynn M. Lane*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been served via the Electronic Case Filing system of the United States District Court for the Eastern District of Tennessee, which will automatically send email notification of such filing to the following attorneys of record:

    Tonya K. Cammon
    Grant, Konvalinka & Harrison, P.C.
    Ninth Floor, Republic Center
    633 Chestnut Street
    Chattanooga, TN 37450
    Email: tcammon@gkhpc.com

    _/s/ Jeffrey G. Granillo_
    Jeffrey G. Granillo